Matthew L. Sharp, Esq.
Nevada Bar No. 4746
**MATTHEW L. SHARP, LTD.**
432 Ridge Street
Reno, NV  89501
(775) 324-1500
matt@mattsharplaw.com

Andre Belanger, Esq.*
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
(803) 222-2222
Andre.belanger@poulinwilley.com
cmad@poulinwilley.com
*Pro Hac Vice* forthcoming

*Attorneys for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KRISTIN DEBENEDICTIS, individually, And on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE GAP, INC., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br> **JURY TRIAL DEMANDED** <br><br> 1. **Unjust Enrichment** <br> 2. **Declaratory Judgment** <br> 3. **Money Had and Received** |

Plaintiff Kristin Debenedictis ("Plaintiff"), brings this Class Action Complaint against Defendant The Gap Inc., ("Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION & VENUE

1.     Plaintiff Kristin Debenedictis is a resident citizen of Las Vegas, Nevada.  Plaintiff has purchased goods from Defendant that were imported from countries subject to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA").  The purchase price for the goods that Plaintiff Debenedictis purchased from Defendant was increased to account for the tariffs imposed on

those products.  Plaintiff Debenedictis would not have paid the increased price if Defendant had not passed the cost of the IEEPA tariffs on to consumers.

2.      Defendant, The Gap Inc., is a Delaware corporation with its principal place of business located at 2 Folsom Street, San Francisco, California 94105.  Defendant may be served via its registered agent, C T Corporation System at 330 N. Brand Boulevard, Ste. 700, Glendale, California 91203.

3.      Defendant is an American multinational clothing and accessories retailer.  A substantial portion of Defendant's products are imported goods subject to IEEPA tariffs imposed by the United States government.

4.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5 million, exclusive of interest and costs.  At least one class member and Defendant are citizens of different states.  And there are over 100 putative Class Members.

5.      This Court has personal jurisdiction over Defendant because it maintains sufficient minimum contacts with Nevada such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice; Defendant has purposefully availed itself of the privilege of conducting activities in Nevada, maintains several retail stores in Nevada, and conducts substantial business with Nevada consumers; and Plaintiff's cause of action arises out of or relates to Defendant's contacts with Nevada.

6.      Venue is proper in this Court because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

7.      Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

8.      Defendant is an American multinational clothing and accessories retailer founded in 1969 by Donald Fisher and Doris F. Fisher.  Defendant is a leading global specialty retailer offering clothing, accessories, and personal care products for men, women, children, and babies under the Gap, Banana Republic, Old Navy, and Athleta brand names.

9. Defendant's products sold in the United States are primarily manufactured in Asia, with significant production occurring in China, Vietnam, Bangladesh, India, Indonesia, and Cambodia.[1]

10. Most of Defendant's products sold in the United States are imported. ,Due to its high reliance on imports, Defendant is heavily affected by tariffs.

11. In or around February 2025, President Donald Trump invoked the International Emergency Economic Powers Act ("IEEPA") to impose sweeping tariffs on imports from China, Canada, and Mexico, primarily targeting drug trafficking and illegal immigration. He later expanded these IEEPA-based tariffs to many other nations to combat trade deficits. Based on this declaration, President Trump invoked IEEPA to announce tariffs of at least 10% on imports from almost all U.S. trading partners.[2] Some reported rates reached 30% (20% IEEPA tariff and 10% country-specific tariff) on all Chinese goods.

12. Under U.S. customs law, Importers of Record (IOR) are responsible for paying tariffs when goods enter the United States. Accordingly, Defendant was required to pay the IEEPA tariffs to U.S. Customs and Border Protection upon entry of covered merchandise into the United States.

13. The IEEPA tariffs sharply increased the cost of importing consumer goods into the United States, especially for retailers like Defendant that depend on global supply chains. For instance, in its Fiscal 2025 Outlook, Defendant stated the 30% tariffs on imports from China and 10% tariffs on imports from other countries could "result in a gross estimated incremental cost of approximately $250 million to $300 million."[3]

14. In response, Defendant took a hybrid approach to mitigating the costs associated with the IEEPA tariffs: raising prices on select items and leveraging supply chain diversification.[4]

15. Between February 1, 2025, and February 20, 2026, Plaintiff Debenedictis purchased items from Defendant that were imported from countries subject to tariffs imposed under the IEEPA.

---

[1] Gap Inc.'s Evolving Apparel Sourcing Base: 2021-2024, available at: https://shenglufashion.com/2025/03/06/gap-inc-s-evolving-apparel-sourcing-base-2021-2024/

[2] Supreme Court Rules Against Tariffs Imposed Under the International Emergency Economic Powers Act (IEEPA). (2026, April 29). Available at: https://www.congress.gov/crs-product/LSB11398

[3] Gap Inc. Reports First Quarter Fiscal 2025 Results, May 29, 2025, available at: https://www.gapinc.com/en-us/articles/2025/05/gap-inc-reports-first-quarter-fiscal-2025-results

[4] Gap expects tariff mitigation to start paying off next year, DIVE Brief, available at: https://www.supplychaindive.com/news/gap-tariff-mitigation-q3-earnings-results/807729/

The purchase price for the goods that Plaintiff Debenedictis purchased from Defendant was increased to account for the tariffs imposed on those products.

16.    On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs and that such tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026). This ruling not only invalidated tariffs imposed under the International Emergency Economic Powers Act, but it also prompted the U.S. Court of International Trade to recognize that importers of record are entitled to refunds of duties paid under the unlawful tariff regime.

17.    In or around April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where IORs can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount. Reports indicate that Defendant is due a $400 million refund.[5]

18.    Unfortunately, the cost of IEEPA tariffs was passed by Defendant onto Plaintiff and Class members through higher prices paid for Defendant's goods. Despite being eligible for a refund of the cost of the unlawful tariffs, Defendant has not indicated any plans to return tariff refunds to customers who paid higher prices.

19.    Plaintiff and Class members paid tariff-inflated prices to Defendant, but Defendant now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

20.    Despite lacking lawful authority, Defendant charged, collected, and retained tariff-related fees from Plaintiff and Class members via its increased prices.

21.    Defendant was not authorized by contract, statute, or law to charge or retain unlawful tariff-related fees.

22.    Defendant's conduct breached its contracts with Plaintiff and Class members and violated the fundamental obligation of good faith and fair dealing inherent in those agreements.

23.    Defendant was unjustly enriched by collecting and retaining money to which it was not legally entitled.

---

[5] Tariff refunds begin on Monday. These retailers are due big paydays. CNBC, Economy (Apr. 20, 2026) available at: https://www.cnbc.com/2026/04/20/tariff-refunds-begin-on-monday-these-retailers-are-due-big-paydays.html.

24. Plaintiff and Class members suffered economic injury as a direct result of Defendant's conduct, including payment of unlawful tariff-related charges and associated fees via increased prices for Defendant's goods.

25. Defendant's conduct was uniform and systematic, affecting thousands of customers nationwide, and was carried out pursuant to standardized policies, practices, and contractual terms. Plaintiff and Class Members were deceived by Defendant's conduct, which created a material mistake of fact and/or law and caused Plaintiff and Class Members to pay higher prices than they ordinarily would have paid or otherwise deprived them of a choice of whether to make the payment.

26. As a direct and proximate result of paying the unlawful tariffs, Plaintiff and Class members suffered financial injury.

27. Plaintiff brings this action individually and on behalf of all similarly situated persons to recover damages, restitution, disgorgement, and equitable relief arising from Defendant's unlawful conduct.

28. Absent relief from this Court, Defendant will continue to retain funds obtained through unlawful pass-through charges.

29. Defendant is among the largest importers of consumer goods and therefore stands to recover roughly $400 million in tariff refunds. Those expected refunds are especially significant here because Defendant previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Defendant will recover duties whose economic burden was borne, in whole or in part, by Plaintiff and Class Members.

## CLASS ALLEGATIONS

30. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

31. Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). The class Plaintiff seeks to represent can be defined as:

**Nationwide Class**: All persons in the United States who, within the applicable period, purchased goods from Defendant and paid higher prices for those goods as a result of tariffs

imposed on Defendant pursuant to the International Emergency Economic Powers Act (the "Class" or "Class Members").

32.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

33.    Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

34.    This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

35.    Numerosity:    The Class is so numerous that joinder of all Class Members is impracticable.  Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more.  The Class is sufficiently numerous to warrant certification.

36.    Typicality of Claims:  Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, purchased goods from Defendant that were subject to IEEPA tariff related price increases.  The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

37.    Adequacy of Representation:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interest antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

38.    Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for

individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

39. <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including, but not limited to:

    a. Whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

    b. Whether Defendant's conduct was unlawful, or otherwise actionable under applicable federal and state law;

    c. Whether Defendant breached duties owed to Plaintiff and Class Members;

    d. Whether Defendant passed tariff costs onto its customers by paying duties at customs and then increasing the retail prices on goods sold;

    e. Whether Defendant included additional processing or brokerage fees above and beyond the amount of the tariff costs;

    f. Whether Defendant's conduct caused injury to Plaintiff and Class Members;

    g. Whether Defendant was unjustly enriched; and

    h. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

40. These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

41. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

42. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for

Defendant.  Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

## CAUSES OF ACTION

### COUNT I: UNJUST ENRICHMENT

43.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

44.    Plaintiff and Class Members conferred a direct financial benefit upon Defendant by paying tariff-related charges in the form of increased prices on goods.

45.    Defendant knowingly received and accepted these benefits.

46.    The tariff-related price increases that Defendant imposed and collected were unlawful and unauthorized.

47.    Defendant collected and retained funds to which it was not legally entitled.

48.    Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

49.    It would be inequitable and unjust for Defendant to retain these funds.

50.    Plaintiff and Class Members suffered economic injury as a result of Defendant's unjust retention of these funds.

51.    Defendant was unjustly enriched at the expense of Plaintiff and Class Members.

52.    Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiff and Class Members.

### COUNT II: DECLARATORY JUDGMENT

53.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

54.    Plaintiff and Class Members purchased items from Defendant that were imported from countries subject to tariffs imposed under the IEEPA.  The purchase price for the goods that Plaintiff and Class Members purchased from Defendant was increased to account for the tariffs imposed on those products.

55. Defendant has requested, or will request, a full refund of what it paid for IEEPA tariffs. However, Defendant passed the cost of the IEEPA tariffs, in whole or in part, onto consumers like Plaintiff and Class Members.

56. Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiff and Class Members to recover the portion of the tariffs that Defendant passed onto its customers via increased prices.

57. As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages.

58. In light of the foregoing, a substantial controversy exists between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

59. Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary.

60. Accordingly, Plaintiff and Class Members are entitled to a declaration that any contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiff and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

61. Plaintiff and Class Members are also entitled to a declaration that any refund Defendant obtains from the U.S. government for IEEPA tariffs must be returned to Plaintiff and Class Members.

## COUNT III: MONEY HAD AND RECEIVED

62. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

63. Plaintiff and Class Members purchased items from Defendant that were imported from countries subject to tariffs imposed under the IEEPA. The purchase price for the goods that Plaintiff and Class Members purchased from Defendant was increased to account for the tariffs imposed on those products.

64. Defendant has received or obtained money that, in equity and good conscience, belongs to Plaintiff and Class Members.

///

///

CLASS ACTION COMPLAINT                                    - 9 -

65.      Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiff and Class Members to recover the portion of the tariffs that Defendant passed onto its customers via increased prices.

66.      Defendant lacks legal or equitable grounds for retaining the money.  Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiff and Class Members.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)      For an order determining that this action is properly brought as a class action and certifying Plaintiffs as representatives of the Class and their counsel as Class Counsel;

(b)      For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c)      For an order declaring that Defendant is obligated to reimburse Plaintiff and Class Members for any and all sums paid in connection with unlawful tariffs;

(d)      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(e)      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(f)      For pre-judgment interest on all amounts awarded;

(g)      For an order of restitution and all other forms of equitable monetary relief;

(h)      For injunctive relief as pleaded or as the Court may deem proper;

(i)      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(j)      Such other and further relief as the Court deems necessary and appropriate.

///

///

///

///

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated:  May 12, 2026                                   Respectfully Submitted,

**MATTHEW L. SHARP, LTD.**


  /s/ Matthew L. Sharp
Matthew L. Sharp, Esq.
Nevada Bar No. 4746
432 Ridge Street
Reno, NV  89501
(775) 324-1500
Fax: (775) 284-0675
matt@mattsharplaw.com

Andre Belanger, Esq.[*]
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
(803) 222-2222
Fax (843) 494-5536
Andre.belanger@poulinwilley.com
cmad@poulinwilley.com
*Pro Hac Vice* forthcoming

*Attorneys for Plaintiff and Proposed Class*